20-1053 from the District of South Dakota, United States v. Michael Cooper. All right. Good morning, Council. Mr. Adams for the appellant. You may proceed. Thank you, Your Honor. May it please the Court, Opposing Council. My name is Jason Adams and I'm here representing Michael Cooper, who was convicted of distribution of a controlled substance resulting in a serious bodily injury and a separate count of conspiracy to distribute a controlled substance. My client was sentenced to the mandatory minimum of 240 months on each count to run concurrently with each other. I bring before the Court three issues here today, specifically whether the trial court erred in allowing 404B evidence in a pretrial ruling. Secondly, whether or not the government's evidence was sufficient to sustain the convictions against my client. And lastly, whether or not the trial court erred in allowing a prior unrelated felony under federal rule of evidence 609. The first issue is the 404B issue that I briefed. The trial court allowed prior bad act evidence, which claimed that my client had previously dealt heroin to the government's main witness in this case, Darcy Hoff. Hoff testified that that act resulted in the overdose of AD. The testimony at trial is that it was Hoff's belief that the drugs to this alleged overdose were from my client and that this supposedly occurred in 2017 or 2018. This court in U.S. v. Ali, an Eighth Circuit case from 2010, discussed the four elements necessary for this type of evidence to be admissible. First, whether or not the act is close in time to the time charged in this case. Thirdly, the government must provide sufficient evidence, proven by a preponderance of the evidence, for a jury to conclude that it occurred. Counsel, would you address why this isn't intrinsic evidence, evidence indicating that the defendant was selling drugs that were either too powerful or otherwise unusually dangerous? Your Honor, the definition of intrinsic evidence is that it's not supposed to be of the exact same type of fact scenario that's set forth in that underlying case, and that's what we have here. The allegation that Hoff makes is the exact allegation that the government was trying my client on, and it's my understanding that that type of intrinsic evidence isn't allowed. That's why the government is trying to get it through the four criteria that I was discussing, so that's why I don't think it's intrinsic evidence, because it's the exact same allegation that my client is being tried for. Specifically, there is no evidence corroborating anything that this Darcy Hoff had indicated regarding this other act. It's just her word. The government brought in no witnesses to corroborate what Hoff was saying with regards to the drug that this AD overdosed on, and the government provided no medical testimony, no law enforcement testimony. There was nothing to corroborate this act that Darcy Hoff was referring to that AD overdosed on, and that is, you know, for the reasons set forth in my brief, highly prejudicial, and I don't believe that the government established sufficient evidence to prove, even by the low burden of proof preponderance of the evidence, for a jury to conclude that that act occurred. As to the first element of relevance under that test that I just talked about, this similar act evidence is only relevant if the jury can reasonably conclude that the act occurred and the defendant was the actor. Again, there's no corroboration of anything. The government put forth nothing but the words of Darcy Hoff to establish that this other act occurred. She couldn't keep the time frame consistent. There were no other details given as to this other act with relationship to AD. The government didn't call AD in to testify. There were no other witnesses called by the government. I will concede that the second element is met in that it's similar in kind, and that goes to the intrinsic evidence criteria. This is the exact same crime that my client was being tried for, and the only thing that we don't know is the time frame, and I know that this court has said in the past that up to eight years is a sufficient time frame, so the year or two time frame that we're satisfied by the government. The last element that the government must establish is that this act was not prejudicial more than it was probative, and a proper weighing of this evidence establishes that this evidence was used by the government as propensity evidence. They basically came in and wanted to establish that if Cooper did this once, he certainly must have done it again, and the government argues that it's intrinsic evidence because it's so intertwined in this crime that it completes the story. As I was trying to say earlier, the definition of intrinsic evidence is evidence of wrongful conduct other than the conduct at issue, and this is the exact same conduct in this case. The government cites to the Thomas case from this multiple witnesses testifying about crack or heroin deals made by that defendant. The Thomas case from 2014 is much different than one person in this case, uncorroborated allegations against my client. This AD was mentioned once during this entire trial, so it's not so intertwined that it completes the story, and the only time that this person was talking about this act and no other reason. Moving on to my next issue, sufficiency of the evidence. As I stated in my brief, it's our belief that there's insufficient evidence that there was a distribution of an opiate resulting in a serious bodily injury. The government was required to establish that my client distributed a controlled substance that led to HK's overdose and subsequently to his serious bodily injury. Under Burridge, our Supreme Court said that a defendant cannot be liable under the penalty enhancement provision unless such use is a but-for cause of the injury or death. The only controlled substance present in this case was cocaine. HK had gone to the hospital, a urine sample was taken, and a cocaine sample was taken. It did not show an opiate. The government's expert testified that the reason for that could have been because it was a synthetic opioid, fentanyl, which doesn't show up in those preliminary drug screens. Also testified that it may have occurred because the sample was taken too quickly and HK didn't have the ability to get that through a system. There was no further or confirmatory testing on HK's urine or any other bodily substance because the government failed to obtain that. Witness at trial indicated that the hospital maintained that urine sample for seven days, but the government failed to obtain that or to even test that urine. The government's main investigator on this case was actually informed for the first time at the first jury trial in this case that there was in fact a urine sample, so the government dropped the ball in obtaining key evidence in this case. As the government stated in their brief, their theory is that it was likely an opiate because HK reacted to the Narcan that was administered to him. We're left here to speculate as to what actually was in HK's body. We don't know if the cocaine was placed with fentanyl. We don't know if it was an actual opioid, if it was a synthetic opioid. We just don't know the answer to that because the government failed to obtain the necessary evidence in this case  Counsel, why isn't this case like Seals? In Seals, the victim injected the drugs and we said that's good enough. Right, Seals case is different than this case because in Seals they actually did have a blood sample that was tested and if I recall contained at least four different opioids in his blood. That's a major difference in this case because we have none of that. The only thing that we have in HK's blood here is cocaine and then another difference in Seals is that in Seals there's testimony that the defendant was present when Seals was overdosing and that he fled from the scene. In this case, Hoff, the middling person, the main government witness, is the only person that claims that she got the drug from my client. That's the only evidence that this drug came from my client and Hoff is actually the one that fled the scene unlike the defendant in Seals. So that's why I think that the Seals case is so much different than this Cooper case. There was a lot more detail, there was a lot more witness testimony, there was a tight time frame in the Seals case. Here we're just left with the speculation and testimony of Darcy Hoff and I don't think that was sufficient for a jury to reach the decision that they did in this case. I see that I'm getting close to my rebuttal time so I would, unless the court has some questions, I would reserve that for my rebuttal. All right. Thank you, counsel. Mr. Parsons. Thank you, Judge Shepard. May it please the court and my friend Mr. Adams. This conviction involved a longtime drug user and drug dealer who trafficked primarily in heroin, fentanyl, and Dilaudid or hydromorphone that he typically acquired through the mail. He was not a large-scale drug dealer in terms of bulk quantities but he was and the drugs he acquired and sold to others were deadly even in very small amounts. I'll begin by addressing the evidentiary rulings that have been appealed and I'll start with 404B. Prior to trial, the government filed its notice of intent to offer evidence of prior acts. That's at docket number 101. We sought to introduce evidence of the course of dealing that occurred over several years between Darcy Hoth, who served as a middle, between Mr. Cooper and the people that Darcy Hoth brought to him in order to sell drugs. The Judge Schreier made her ruling on in the June 17, 2019 pretrial conference, I think on page 23, and she did the appropriate 404B balancing. She found that it quite possibly was intrinsic evidence, including the evidence of the extremely similar overdose, but her ultimate holding was that it was material relevant on the issue of motive and intent. She specifically found that if Ms. Hoth testified, that it would be proved by a preponderance of the evidence and she found it was more probative than prejudicial and very similar in kind to the crime charge. What actually happened, this was Alyssa Detloff who overdosed, probably one of the second biggest customers of Darcy that she would bring to or hook up with Cooper without them actually ever meeting. She acquired the drugs from Cooper, gave them to Alyssa, and I think there's some suggestion that her testimony is ambiguous on that. Her testimony was, I believe I got these drugs from Mr. Cooper, and there's nothing I sense and ambiguous about that, and certainly the jury or Judge Schreier didn't find that ambiguous. Once they took them, she turned purple. She convulsed. Darcy did a sternum or tried to do CPR on her, and she came to. The evidence was this happened within about a year of the overdose that is the subject of this case. Testimony was either in 2017 or 2018, and this overdose that we're talking about in this case was in August of 2018, and the same process happened. If we're talking about knowledge and intent here under 404B, why is the prior overdose relevant? The reason why I ask that is I'm not sure that there's any evidence that Cooper actually knew about the prior overdose. I don't know if there is evidence that he knew about the prior overdose, but it's evidence he denied that he ever even sold heroin. His testimony, he took the stand and said, the only thing I ever, I was a drug dealer, but I was only a drug dealer for Dilaudid pills with Darcy. This is the evolution of his testimony through various forums in which he admitted to more and more increasingly, but he never admitted he was a heroin dealer or a fentanyl dealer. He may not have known there was fentanyl in what he was selling. He might've thought it was heroin. A lot of people think they're buying heroin, turns out these days to be fentanyl and something else. It shows that he was selling extremely potent drugs that resulted in another overdose in the same type of system he had, the same deal between where Darcy, and here was her deal. She would not connect Cooper directly with her customers. She would get a call from either Herman Kleinsasser, the victim here, or others. I need a couple of clicks of heroin. She would contact Cooper. She would drive to the gas station right next to the Red Rock Inn, have her customer wait in the car. She would go into the Red Rock usually, although there were a couple of times he did it outside and witnesses saw him do that. Then she'd bring it back. Then she would take her pinch of the drugs or her extra cash, and they would use the drugs almost immediately. Well, that's what happened in the case of this prior overdose, and that's what happened in the case that we're talking about here. So I think it goes certainly to motive, intent, and it goes, I think it's intrinsic evidence, because this was a course of dealing over a couple of years. But this was within about a decade, certainly within two years. So I think it's clearly, in fact, the DRAPO case, U.S. v. DRAPO, is really especially on point, where this court held that evidence of defendant's prior drug sales is probative of his intent to distribute, which he denied. That was an element of the charged offenses here. Also in DRAPO and other cases where this evidence has been affirmed, the district court has given a specific limiting instruction on this evidence, and Judge Schreier gave one here. It was instruction, final instruction number five, telling the jury exactly what it could consider this evidence for specifically, and that it could not consider it as propensity character evidence. And really, I don't know how you say that a prior overdose reflects on someone's character. This is not the propensity that he had a character trait of selling drugs. This was what he did. This was his motive, his plan, his preparation, his intent. And it showed that he had these terribly powerful drugs and was selling them. And again, the jury was able to hear Ms. Hoff. And so an attack on her credibility is saying, well, her testimony is not good enough. That's for the jury to determine. And they found her to be credible, and Mr. Cooper to be decidedly uncredible in his testimony. And in fact, Judge Schreier at instances. I'll talk just briefly about the prior conviction. I think that goes, it has even less resonance. Judge Schreier followed exactly rule 609. And this was a prior conviction that was a felony, was within the previous 10 years. And so it was absolutely probative of credibility because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath. And so that's why it was admitted that the prior felony itself was an aggravated assault where Mr. Cooper stabbed someone in the abdomen because he thought this was someone who had ripped him off before. But that didn't even come in. The only thing testimony about this issue, the aggravated assault was brought out by the defendant after Judge Schreier's ruling, and only that he was convicted of aggravated assault and did 130 days in jail. That's all the jury heard. The government never pursued this line of questioning at all, didn't use it in closing argument. And so even if it was there, it was certainly harmless. So I'll get to the evidence of guilt in this case was plentiful and persuasive and viewed in the light most favorable to the jury's verdict certainly should be affirmed. As I gave some of the background, these two dealt with each other for years, at least a couple of years. They met in 2015 and quickly began using drugs together, selling drugs together. She would wire money for him. She would give him rides to different places. If you look at Michael Cooper's phone records, which are exhibit 66, in the six weeks prior to this overdose, Darcy Hoff is the number that has most frequent contact with Michael Cooper's phone. 389 contacts in less than seven weeks, either texts or calls between Hoff and Cooper. So they're talking all the time and testimony with heroin from Cooper, multiple times a day, almost every day, multiple times a day, whenever she could get the money or whether she had someone she could connect who had the money and she could take a cut from that. And so they would do this transaction on the day. Herman Klein Saucer and Jacob Cranny wanted each one to click a heroin. A hundred bucks was the price. She parks at the gas station. She goes in and then we've got the security camera footage and you can see her outside of Michael Cooper's room, room 168, with a timestamp. She brings out, after she gets the drug, she brings it back out. They take the drugs almost immediately, Herman does, and a few minutes away from them pulling out, they're parked in an Arby's parking lot. He's convulsing, turning blue, turning purple. His breathing is extremely shallow. He's overdosing. So they call 911. The cops come. Two shots of Narcan. The first one doesn't work. The second one works. Narcan is an extremely powerful drug that only works on opioids. Whoever invented it should get a Nobel Prize because they've saved thousands of lives. It will bring someone back from the brink of death. It interrupts the connection of the opioids, the receptors in the brain, and you will come back to life. You'll start breathing again. You'll turn pink again from being blue. And so that's what happened. After two of those, he's immediately back. So only, and their medical testimony proved only, an opioid could do that. Only an opioid could be fixed by Narcan. So we have this condensed time. It's minutes between getting what you got from Cooper, him taking it, the overdose turning blue, turning purple, almost stopping breathing, and then the Narcan fixes it almost immediately. So we go to the hospital. This guy, the victim goes to the hospital. He gives some urine. There's only cocaine in the urine. And cocaine's a stimulant. It would not have stopped his heart and sedated him in that way that an opioid would. No heroin is found in him because heroin would have showed up on the screen that the medical testimony was that the hospital did. But synthetic fentanyl does not show up on the screen was the medical testimony, the screen that they did. And so the only drug in his system is cocaine, which couldn't have caused the overdose in this fashion. And we know he got this substance from Michael Cooper, took it, and it was an opioid. The only logical conclusion that it was fentanyl that he got from Michael Cooper, synthetic fentanyl. So we do a search warrant, and we hit paydirt. They search his apartment, get a search copy pot. They find a substance. What is it when it's tested? Fentanyl. It's a purplish-bluish-white kind of powder. It's fentanyl and an ANPP, which is a fentanyl precursor. So the substance and the testimony from other witnesses and from Darcy was that it was this purplish-bluish substance that he had been selling lately. So whether he knew it was fentanyl or not, he got it in the mail, presumably. He had a dictionary with a hole in the middle of it, cut out that you could store drugs in. And she had seen him getting drugs in the mail that way before. There is much more evidence in this case, I would suggest, even than in SEALs, which is pretty much on all fours. But the timing here is even more condensed. And Judge Shepard's case in the United States, Harris, as well, talks about, it's not our burden to exclude every other possible drug. If we come up with a factual scenario that makes it almost certain that this happened and we combine it with medical testimony, as we did, Dr. Smell testified that this was an opioid overdose. It certainly was serious bodily injury. This man almost died and was brought back by the Narcan, thank goodness for the Narcan. And so combined with the testimony of the medical testimony by the paramedic, and he put it very well, a young man like that just doesn't drop over in a parking lot for no apparent reason and appear to be dead and then all of a sudden get right back up on his feet after a medication like Narcan is administered, that very specifically points to a narcotic overdose of some kind. And the substance we've tied him to is what he got from Mr. Cooper. So this was more, more than enough to satisfy Burrage on every level, more than enough for the jury to have found him guilty, more than enough for Judge Schreier to have sentenced him to the mandatory minimum of 20 years. We ask that this court affirm this case in all respects. Very well. Thank you, Mr. Parsons. And Mr. Adams, you have three minutes and 40 seconds. You may proceed. Thank you, Your Honor. I guess I'd like to start by addressing the court's question to opposing counsel. I do believe that is highly prejudicial to allow another overdose without corroboration. It's one thing to allow testimony regarding a distribution, but it's a whole other issue and it's not relevant to allow an act that is the exact same crime that my client was being prosecuted for. You don't think that was relevant in light of the general denial? I mean, it makes a general denial. I didn't do it. I don't sell. I don't sell drugs. And so it does show, hey, you've sold drugs before, so you must have the intent to do so here as well. I understand that, but without corroborating evidence, you're basically allowing one person to make this allegation, the same person that's making the same allegations against my client at the trial. The other cases that the government cited in their brief, those are different because there are multiple witnesses in the one Thomas case. In the other Thomas case they cite, we talked about two prior convictions, which obviously are much more credible than somebody's word that this occurred. And this individual is unable to stay on point and consistently give the same version of events, whether it regarded this overdose of when it occurred or whether it regarded some of the other things that the government talked about in the When the government was talking about the phone records, I would point to exhibits number 44 and 106. This Darcy Hoff had indicated in her testimony that she is the one that called my client to set up this deal for HK, for Herman Klein's officer. That is not supported by the phone records that the government put into evidence at this trial in exhibits 44 and 106. Additionally, the government talked about the overwhelming evidence in this case and they talked about finding fentanyl. They found 0.08 grams of fentanyl in a coffee pot in my client's motel room. That's hardly the type of evidence that would indicate that my client was some because the government failed to obtain that evidence. We do know that there's cocaine in there. We don't know if that cocaine was laced with fentanyl. We just don't know the evidence because the government failed to obtain that evidence. And I disagree with the government's position that there is much more evidence in this case than there was in seals. That's simply not the case. In seals, they had the blood. They knew exactly what was in that victim's blood. They had experts testify as to the effect that those substances would have had on that victim. We didn't have any of that present here in this case because the government failed to get that necessary evidence. So we're left to suppose and assume that was in fact heroin. I see that my time is about to end. I'd like to thank you, and if there are no other questions, I'll end my argument. Very well. Thank you, counsel and Mr. Adams. Thank you for your service under the Criminal Justice Act. It's appreciated. All right. The case is submitted and the court will render a decision in due course.